Good morning your honors and may it please the court my name is Jennifer Anderson and I represent the petitioners David Matusow and Sandra Barr and if possible I'd like to reserve two minutes for rebuttal. Okay. You're not required to keep on your mask if you'd like to keep it on for your own purposes. Thank you. We're so anxious to see the you. In light of this court's recent decision in Barr v. Reagan I'm going to focus my argument on the contingency measures issue. The Phoenix metropolitan area has a long history of violating federal ozone standards putting Phoenix residents at risk for lung ailments, hospitalization, and even premature death. And indeed right as we speak the EPA says they're not in compliance. That is correct. The EPA. But this case is about history right? I'm sorry. This case is about history. It's about what happened the last time around. The fact that there's an ongoing proceeding of some kind about attainment or non-attainment. Correct. That may be Barr 3. There will inevitably be a Barr 3. So the EPA did find that Phoenix attained the 2008 ozone standard as of the deadline of July 2018. However that attainment was fleeting and it is undisputed that Phoenix has since violated the 2008 standard numerous times and is in fact over their stand. The design value for Phoenix is 79 parts per billion. The standard is 75 parts per billion. So the ozone is in fact getting worse in the Phoenix metropolitan area. Despite knowing this. But that's not what this case is about. That's not what this case is about. What this case is about. Well it's it it is important to know because what this case is about is that the EPA approved a plan to purportedly address the 2008 ozone standard. Which the EPA approved? The EPA approved. However it excused contingency measures for reasonable further progress. So it excused the state of Arizona from having to adopt measures that would go into place if the Phoenix area started violating the standard again. Because of a sort of a flip-flop in timing. You correct me if I'm wrong. My reading of the record is wrong on this. But my understanding is that when EPA said okay we approve you're in compliance. They said so we don't need to address the subject of what you're going to do in the future. Do I have that sort of right? So the EPA did find that Phoenix was in separate rulemaking. It it approved a plan that after the fact it approved a plan that the state of Arizona had submitted to achieve the 2008 ozone standard. And it approved that plan at a time when it knew that Phoenix had Well it in our view shouldn't have approved that plan. And was that allowed under the regs? Well we don't we don't think that Phoenix actually attained the standard. However we can't challenge. Yeah that's that's beside the point. I would say that it was arbitrary and capricious to say that the that the reasonable that the reasonable available control measures demonstration was approvable when it was clear that those measures were not enough to keep the Phoenix area in attainment. I mean it's it you know usually what happens is EPA approves a plan before long before the deadline right? And so EPA has to rely on modeling to show that that these measures are going to achieve attainment. In this case EPA approved the plan knowing that Phoenix was back out of attainment. It approved the reasonable available control measures demonstration. It approved the knowing that Phoenix was maybe made progress to a point but then regressed and that those measures were not enough. And on top of that EPA excused the state of Arizona from having to adopt reasonable further contingency measures in that addressed you know reasonable further. So if if if Phoenix failed to make reasonable further progress then these contingency measures should come into play. I want to make sure I understand your argument. The EPA finalized its determination that the Phoenix Mesa area had attained the 2008 ozone standards and they were given until July 2018 to attain correct? Yes. Are you telling me that the when the agency made that determination they knew that the Yes. And where's that in the record? I can I can find it. We'll find it. Okay yeah okay. Your good faith belief is that's in the record. So yes so they what EPA found was that Phoenix attained the standard as of July 2018 but but they knew that it My question. Oh I'm sorry. At the time they approved is it your contention that at that moment they knew Phoenix Mesa was in non-attainment? Yes. And and if I'm incorrect I will I will correct. Pretty important point. Yeah yeah. So let me you know when I read the recent our recent bar decision it's it seemed to foreclose your argument. I think. I may be you know I must admit this is not like so many Matt administ these federal administrative matters that we see all the time. You know I'm not an expert by any stretch of the imagination and maybe I didn't fully understand BAR but is there a significant or qualitative difference between you know the primary issue and in BAR which was attainment mm-hmm and the issue you're pressing here? There is a significant difference and and that's why I'm focusing the argument today on the contingency measures issue because in BAR in BAR we had challenged EPA's excusal of attainment. So the the contingency measure provision says that section 172 c9 says non-attainment SIPs shall provide for the implementation of to make reasonable further progress number one so RFP contingency measures or to attain the national primary ambient air quality standard by the applicable attainment date. So number so two attainment contingency measures those are the two types of contingency measures. In BAR the court said attainment EPA found that Phoenix attained the standard by the deadline attainment contingency measures can never come into play again so it was a reasonable interpretation of the Clean Air Act for EPA to excuse those. However the court also said that RFP contingency measures are not automatically suspended after the attainment date. EPA might suspend RFP contingency measures under a similar rationale pursuant to its clean data policy but unlike attainment contingency measures those measures may be suspended only as long as EPA determines that the area has not violated the NAAQS. So our problem here is that EPA has excused RFP contingency measures knowing that the Phoenix area no longer attains the ozone NAAQS. Am I I mean the language you've just quoted obviously helps your position a lot but that was completely not real I mean it wasn't relevant to the holding in BAR right? We're not bound by that. We will hear from EPA on the other side but I I mean I I read that and I'm not quite sure why the court went out of its way to say that because it really had nothing to do with what it was asked to decide but we are not bound by that. And I understand that and that's and that's true but the importance that the it's important to focus on the language of reasonable further progress and what that means and what the difference between reasonable further progress and attainment is. So attainment is there's a date and you need to attain by that date. Reasonable further progress is defined as such annual incremental reductions in emissions of the relevant relevant air pollutant as required or maybe reasonably required for the purpose of ensuring attainment of the NAAQS by the applicable date. So that's why exactly so that seems to me the rationale we use in BAR to explain why the attainment contingency measures have become redundant once attainment is achieved. It applies equally to the RFP. I don't think so because because reasonable further progress that word ensuring I think is important. You're in they're designed to ensure attainment to make it safe to make it lasting. Yes it's by the attainment date but it's reasonable further progress toward a goal. The goal being attainment. So once attainment has been achieved according to the EPA at least. I guess that's what I don't understand. It is it is now redundant. But I think that reading subverts the intent of Congress. I mean I think that a bar I mean the court in BAR did say that you know the language was somewhat ambiguous and so we need to step move to step two of Chevron. And the the DC Circuit you know pointed out that considered as a whole the Clean Air Act reflects Congress's intent that air quality should be improved until safe and never allowed to retreat thereafter and that's in South Coast. So under EPA's interpretation after the attainment date everything's out the window. You don't need contingency measures. Air quality can deteriorate and it's no problem unless EPA decides in its discretion to step in and make a SIP call which by the way it hasn't done. And it's been several years since you know it's been I mean Phoenix has been violating the standards since 2018. I think you need to read that the reasonable further progress definition in light of Congress's intent that it's not just that we get to the goal of attainment and okay we're good. The point is to maintain air quality to protect public health. And does EPA ever you know adjust the standards? Make them more demanding? They do and they have, yes. When was the last time they did that? There is a 2015 ozone standard that is 70 parts per billion so it's five parts per billion stricter. Is there anything in the works by EPA to make that more? That I don't know you'd have to ask Council for EPA. Just so I'm clear what EPA was looking at in July of 2018 was whether Arizona's SIP showed that the Phoenix Mesa area had reached attainment for 2008 standards? Correct, for the 2008 ozone standard. Yes, yes. And so an EPA I has interpreted these provisions as meaning that it can excuse things like contingency measures only for so long as an area continues to attain the standard and that's in the site memo sites memo which is codified at 40 CFR 51.1118 which says that requirements to submit SIP provisions addressing contingency measures among other things can be suspended for areas demonstrating attainment of the ozone max but only for so long as the areas areas continue to meet the standards and it further says that an area can only be entirely relieved from the RFP contingency measure requirement by being re-designated to attainment. So it doesn't EPA it doesn't say you know they can they're entirely relieved once the attainment date is reached. It has said they're entirely relieved upon re-designation to attainment which has not happened with the Phoenix area. So there's there's a there's a finding of attainment so the finding of attainment was just okay there's three years of clean data we find that the Phoenix area is an attainment of the standard. Re-designation to attainment is a much more involved process. It involves a maintenance plan and all you know and and and many other things and so that is also significant that EPA's action is directly contrary to its own guidance its own regulations which say which says that and again I'm focusing I have to focus on RFP contingency measures in light of Barr versus Reagan but they can they can only be relieved of those measures upon re-designation to attainment. Unless the court has any more questions I think I will reserve the rest of my time for rebuttal. Okay thank you. Very good. Let's hear from counsel for the EPA. Good morning your honors and may it please the court my name is Andrew Knutson with the U.S. Department of Justice. I'm representing the government today. The petitioners appear to have dropped their objections to the SIF action regarding approval of various SIP provisions or at least rested on their briefs on those issues so I'll primarily address the the main argument remaining before the court which is whether EPA should have required Arizona to include contingency measures in its SIP that would have been triggered by failure to make reasonable further progress towards attainment by the attainment date even though the triggering event for those contingency measures could no longer occur. That interpretation was a reasonable interpretation of the Clean Air Act and in last year's decision in Barr v. Reagan this courts upheld EPA's action with respect to a similar set of contingency measures known as attainment contingency measures. The courts have reached the same conclusion here and find that EPA's action was a reasonable one. Can you just address that language though that your opponent read from Barr because it seemed to seem that the panel there had a very different view I guess of the RFP contingency measures than what you want us to adopt. Certainly I'm happy to address that your honor. I think that the language that the Petitioners Council is citing I think can't plausibly be read to support their position that this court was somehow ruling that EPA can never find RFP contingency measures become inapplicable and I think that's clear from the language of the decision. The sentence that they cite is immediately followed by footnote 23 of that decision and there the court was recognizing that EPA had in fact taken action in the rule challenge here to find that RFP contingency measures are no longer applicable. The courts explicitly said that it wasn't ruling on that issue and went further to state that that action had no impact on its analysis in Barr. So I think the petitioner's argument is that the court was somehow relying on the idea that RFP contingency measures could not become inapplicable and would always be able to spring back at some point. So when Arizona's SIPP made the 2018 deadline with its plan etc we were dealing with ten-year-old requirements? Your honor it's true that the that the standard itself the ozone acts was promulgated in 2008 but we're dealing with the ongoing implementation of that standard and with the state's efforts to to come into attainment of the standard. So at some point in time the EPA determined that the Phoenix Mesa area was not in attainment correct? That's correct your honor. When did that happen? I believe that an initial designation was in 2012 but I'm I'm sorry I'm not remembering the exact year. So four years after the date of the standards? That's correct your honor. And Arizona was told to produce a plan an SIP which they did and EPA approved? That's correct. Is remedial ongoing progress even though the agency knew to a certainty that the area was not attained? Well if I may I'd like to clarify some of the the procedural history. Start with a yes or no. No that's not correct your honor. Okay what is correct? Well initially the Phoenix area was classified as non attainment and classified as a marginal non attainment area with an attainment date in 2015. EPA approved a plan a marginal area non attainment plan. In 2015 EPA made an analysis of whether the area had attained by its then applicable attainment date under section 7511 B2. Under that provision EPA is required to look specifically at the area's design value or its measure of air quality as of that specific attainment date. It found that at that point in 2015 Phoenix had not attained the NAAQS. So it reclassified the area as moderate and that subjected it to new and more stringent planning requirements for its SIP. Arizona was then given a new attainment date which is required under the statute of July 2018. Arizona submitted a plan to address those new planning requirements and in the meantime as July 2018 came and went EPA again made a determination of whether Phoenix had attained by that attainment date. This time however as of July of 2018 the data did show in fact that the area had attained the NAAQS as of that date and this court in Barbras-Reagan upheld that determination by EPA. Following that EPA took action to take final action approving Arizona's SIP that was submitted to address those moderate area non attainment requirements and that action is the one that's at issue here today. Now again going back to the the main issue of whether RFP contingency measures should have been required. I'll note at the outset before getting to the merits of that that the petitioners have waived the majority of their substantive arguments challenging that by failing to bring them up in their comments. They did submit comments on the proposed action but those were limited to two specific issues that didn't address the statutory interpretation questions and the Chevron doctrine or the purported inconsistency between EPA's action here and previous actions. However getting to the merits of this issue I think this court's decision in Barr goes directly to EPA's rationale here and it should lead this court to the same result. EPA was acting to address the statutory gap left in the Clean Air Act that's essentially identical to the one at issue in Barr and that comes first from section 7502 c9 which includes the contingency measures requirements. It says that a state plan must include contingency measures that will be implemented automatically upon failure to make RFP. And EPA's interpretation for the past 30 years has been that specifically for moderate ozone non-attainment areas like Phoenix the triggering event for those contingency measures is a failure to attain the NAAQS by the applicable attainment date. And section 7511 b2 as I mentioned earlier your honor specifies that in making that determination of at the design value as of that specific date and not on not an ongoing air quality. So as a matter of step one of Chevron the government believes in this court agreed in Barr that the Clean Air Act's plain text doesn't address the the question kind of left by the interaction of these provisions which is whether EPA needs to require the state to submit contingency measures that can no longer be triggered. The court agreed with that position in Barr and that decision aligns with other decisions by the DC circuit, the 10th circuit, and the 7th circuit. And in the court notably acknowledged or stated in Barr that same holding at step one of Chevron applies both to attainment contingency measures and RFP contingency measures. So moving ahead to step two of the Chevron analysis EPA's reading here is a reasonable one and it's entitled to deference. EPA's reading is reasonable because there's essentially no logical purpose to to requiring a state to submit measures in its SIP. It could never actually take effect. Again in Barr the court found that that doesn't do any harm to the Clean Air Act statutory plan or its efforts to to address air quality issues. And it seems true here. What about the scenario that your opponent raised in which okay fine the area achieves attainment but immediately you know falls out of attainment status as I Right. I mean what then? I mean it just seems like there's nothing that EPA is then required to do because you've sort of hit the magic point and doesn't matter what happens after that no matter how bad things degrade. I guess that's that's the concern she raised about the reasonableness I think of the EPA's interpretation here. That's right your honor and they did raise that issue and this as well this idea of leaving a kind of non-attainment limbo where Phoenix has no way to continue improving its air quality. And we submit that that's that's simply not correct and the Barr agree with that in in in that decision. For one there are there are other provisions of the SIP that remain in place that will continue driving emission reductions including permitting requirements for new sources that require offsets to any any new emissions in the area. Arizona has has ample incentives to continue reducing its air quality to to be able to be re-designated to attainment and if those incentives aren't enough again EPA has discretionary authority under section 7410 k5 to issue a SIP call if it finds that the current plan in Arizona is substantially inadequate to to result in attainment and maintenance of the NACs and and I'll note that that specific provision does use the language attain and maintain the NACs whereas the RFP provision does not. And finally we've discussed EPA's authority to further ratchet down the ozone standards and EPA did that in 2015 and adopted a more stringent ozone NACs and the implementation of that standard is also currently ongoing. EPA is currently in the process of analyzing whether the Phoenix area should be reclassified from marginal non-attainment to moderate non-attainment for that standard and if it does that would submit the Phoenix area again some more stringent planning requirements that will drive further emission reductions and address the kind of ongoing non-attainment issues that the petitioners have pointed to. When does the new standard go into effect or is it already in effect now? The 2015 standard is already in effect and again the Phoenix area was initially classified as a as a non-attainment area with a classification of marginal non-attainment. It's its first attainment date for that 2015 standard passed in August of last year and so that's why EPA is currently in the process of analyzing the air quality as of that date to determine whether it should be reclassified. If it is reclassified the new attainment date is actually defined by statute and regulation already as being in August of 2024 and the regulations also state that any control measures to address those that non-attainment must be in place by the beginning of 2023 which is less than 12 months away. So the idea that the implementation of this new standard is it's too far in the future to be meaningful is simply not the case. Finally on this issue I'll note that the petitioners have argued that what EPA has done here is inconsistent with its past practice but again that's not the case because what the petitioners are pointing to are cases where EPA had a policy that allows EPA to find prior to the attainment date that an area's air quality is consistent with attainment of the next. That's legally distinct from what EPA is acting in response to here. Again EPA issued a determination of attainment by the attainment date under section 7511 B2 and that has a an important distinction because it means that the area's RFP contingency measures could no longer be triggered. I'll note that in their reply brief the petitioners relied heavily on an action that was at issue in a case called Our Children's Earth Foundation that dealt with a 2004 action for the San Francisco Bay Area and they claim, they point out that that was at least called an attainment determination in the heading and the title of that action. Looking at the substance of that action it's clear that EPA was actually carrying out its clean data policy and it hadn't made a 7511 B2 determination for the San Francisco Bay Area. That's clear from the the plain language of that action which said at page 21723 that its legal basis for that action was a clean data policy. It's also clear from the fact that EPA took that action a full two years before the attainment date. So again for the San Francisco Bay Area in that action it was clear that it was still possible for the area to relapse in the non-attainment before the attainment date and for those where again EPA has found that the area attained by the attainment date and this court has previously upheld that. Finally I'll note just to briefly address the petitioners arguments regarding the approval of the SIPs attainment demonstration and reasonably available control measures provisions. Again it appears that the petitioners may have dropped those arguments because they weren't included in their reply but just to briefly address those, Arizona did everything in its SIP submission that was required by the Clean Air Act and by EPA's regulations. Regulations which by the way were previously challenged in the DC Circuit and upheld. Those regulations required Arizona to submit an attainment demonstration showing that its plan would provide for attainment as of the attainment date. EPA approved that that modeling that was submitted by Arizona and again the monitoring data did bear that out that at least by the goal of the Clean Air Act set of attaining by the attainment date that actually occurred. And again for the reasonably available control measures regulations require the plan to include sufficient controls to attain the NAAQS by the attainment date. EPA found that the submissions by the state were sufficient to show that and again the monitoring data bore that out. Both of those statutory requirements and regulatory requirements are tied to attainment by the attainment date by their own terms and they don't require EPA to look at ongoing attainment issues. So EPA was acted reasonably when it approves Arizona's SIP based on the requirements of its own regulations. If there are no further questions I'll conclude there. Okay all right thank you. Appreciate your argument. Counsel for the petitioners you have some time for rebuttal. Thank you your honor. Just a couple points. Judge Hawkins to your question. On page 33 of petitioners excerpts of record is a page from what's called the EPA green book which shows the design values for different non-attainment areas and this is dated June 18th 2019. It was attached to our that before EPA finalized the rulemaking at issue in this case anyway for the Phoenix Mesa area there's a column that says it has the design value does the design value is 77 parts or 0.077 parts per million which is 2 parts per million over there 0.002 parts per million over the standard and the column meets NAC's question is no. So at least as of EPA's finalization of this rulemaking EPA knew that the Phoenix Mesa area was out of attainment. This is June of 2019. Correct. Okay thank you. As far as EPA's argument about waiver let me just read from our comment letter. As EPA observed and this is at page 29 of the excerpts of record. As EPA observes in the proposed rule the plan does not adopt any additional contingency measures and instead relies on so-called surplus emission reductions from measures that have already been implemented. EPA is correct that it must disapprove the contingency measure element of the plan. EPA deviates from the acts plain language and binding case law however when it proposes to excuse the lack of contingency measures based on EPA's earlier and non-final proposal to find the Phoenix non-attainment area in attainment of the 2008 standard. Even if an attainment finding is supported, which it is not, there is no statutory basis for excusing MAG which is the regional planning authority from including statutorily required contingency measures in the plan. So there was absolutely no waiver of that issue. To argue that citizens in a comment letter have to lay out you know an entire appellate brief on an issue is is ridiculous. I mean that would deprive almost all citizens of their right to challenge agency actions. You know as far as you know... Looking at this letter is a pretty sophisticated citizen. Well she had some help. She had some help. Finally EPA's contentions about you know other ways that this you know that Phoenix can be brought into attainment simply ring hollow and he points to other provisions in the SIP well those have clearly not that's the reason why you have contingency measures is because the control measures that have been adopted in the SIP are not enough to bring the bring the area into attainment and to maintain attainment. There is absolutely no incentive for the Phoenix area to do more because there's no penalty for them not doing more and it is it is costly. As far as EPA's discretion to issue a SIP call, I would love to see that happen but it's been since 2018 and it hasn't happened yet. With that we ask the court to vacate and remand. Thank you. Okay thank you both counsel for your helpful arguments in this case. The case just argued is submitted and we are adjourned for this session.
judges: HAWKINS, PAEZ, WATFORD